UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
BRONX DEFENDERS, WASHINGTON              :
SQUARE LEGAL SERVICE, INC.,              :
AMERICAN-ARAB ANTI-DISCRIMINATION        :
COMMITTEE, NATIONAL COUNCIL              :
OF LA RAZA, NATIONAL IMMIGRATION         :
LAW CENTER, NEW YORK IMMIGRATION         :
COALITION, and THE AMERICAN CIVIL        :
LIBERTIES UNION,                         :
                                         :
                        Plaintiffs,      :       04 CV 8576 (HB)
                                         :
- against -                              :       **OPINION & ORDER**
                                         :
UNITED STATES DEPARTMENT OF,             :
HOMELAND SECURITY and UNITED             :
STATES DEPARTMENT OF JUSTICE,            :
                                         :
                        Defendants.      :
                                         :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

Plaintiffs, a coalition of advocacy organizations, filed this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel disclosure of documents by various federal agencies including the Department of Justice, the Department of Homeland Security, the Office of Legal Counsel, and the Federal Bureau of Investigation (collectively, the "Government"). In a motion for partial summary judgment, the Government contends that two documents need not be disclosed pursuant to a FOIA exemption. Plaintiffs claim that any FOIA exemption has been waived. Following oral argument on July 12, 2005, and an in camera review by this Court, the Government's motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

On October 27, 2004, in connection with a related matter, Doe v. Immigration & Customs Enforcement, 2004 U.S. Dist. LEXIS 12021 (S.D.N.Y. June 29, 2004),[1] Plaintiffs submitted several FOIA requests for the production of records from different

---

[1] In June 2004, this Court Ordered NCIC to change its policy regarding the database. At present, there is a motion by the Government to reconsider that Opinion and Order and that case is in abeyance until this FOIA action is resolved. Doe, 2004 U.S. Dist. LEXIS 12021 (S.D.N.Y. June 29, 2004).

1

federal agencies including the Department of Justice ("DOJ") and its Office of Legal Counsel ("OLC"). The records sought by Plaintiffs involve the type of civil immigration information entered into the National Criminal Information Center Wanted Person File ("NCIC"), a national database of criminal records maintained by the FBI and used by local, state, and federal law enforcement officers. The OLC identified forty-eight documents as responsive to part of a much broader FOIA request. It withheld five documents pursuant to the FOIA exemption that excuses "inter-agency or intra-agency memorandums [sic] or letters which would not be available by law to a party other than an agency in litigation with the agency." See 5 U.S.C. § 552(b)(5). Plaintiffs challenge the Government's decision to withhold only two of the five documents, (1) an unpublished Memorandum (the "1989 Memo"), from the OLC to FBI Assistant Director, Joseph R. Davis, entitled "Handling of INS Warrants of Deportation in Relation to NCIC Wanted Person File," April 11, 1989, and (2) an OLC Email (the "2002 Email") to Immigration and Naturalization Services ("INS") officials and the Office of the Attorney General.[2]

      The Government moves for summary judgment on the ground that both the 1989 Memo and the 2002 Email are exempt from disclosure pursuant to 5 U.S.C. § 552(b)(5), because they are protected by the deliberative process privilege and attorney-client privilege. Plaintiffs argue that the documents must be disclosed under the affirmative provisions of FOIA, and that with respect to these documents if they ever were privileged, the FBI has waived any such privilege. More specifically, Plaintiffs claim that (1) the deliberative privilege should not attach to the 2002 Email, and (2) the 1989 Memo has lost its deliberative privilege status through public disclosure or adoption and incorporation of that memo into FBI policy.

---

[2] As of March 1, 2003, the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), replaced the Immigration and Naturalization Service ("INS") as the agency responsible for the enforcement of immigration laws.

## II. DISCUSSION

FOIA is the product of a Congressional policy of transparency and openness toward sharing government information. Simply put, "the public is entitled to know what its government is doing and why." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 869 (D.C. Cir. 1980). To further this goal, FOIA strongly favors disclosure and requires federal agencies to make any record available to any person upon request unless its documents fall within one of the specific, enumerated exemptions set forth in the Act, 5 U.S.C. § 552(a)(3), (b)(1)-(9), and even then the exemptions are narrowly construed. Local 3 Int'l Bhd. Of Elec. Workers v. NLRB, 845 F.2d 1177, 1180 (2d Cir. 1988).

Generally, FOIA requests are resolved on summary judgment following its proper identification. See, e.g., N.Y. Pub. Interest Research Group v. United States EPA, 249 F. Supp. 2d 327 (S.D.N.Y. 2003). The district court makes its determination de novo. See 5 U.S.C. § 552(a)(4)(B). In order to prevail on a motion for summary judgment, the defendant agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to FOIA. Id.

At issue here is whether the 1989 Memo and the 2002 Email are protected under FOIA's fifth exemption ("Exemption 5"), which permits an agency to withhold "inter-agency or intra-agency memorandums [sic] or letters which would not be available by law to a party other than an agency in litigation with that agency." 5 U.S.C. § 552(b)(5).

The Government contends that both documents are protected from disclosure by the deliberative process privilege and the attorney-client privilege. The deliberative process privilege is "a sub-species of work-product privilege that covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Tigue v. United States Dep't of Justice, 312 F.3d 70, 75 (2d Cir. 2002). It is intended to promote candid discussion between agency officials and protect the quality of agency decisions. Nat'l Council of La Raza v. Dep't of Justice, 411 F.3d 350, 356 (2d Cir. 2005). To qualify for the privilege, the document must have been predecisional and deliberative, meaning that it was "prepared in order to assist an agency decisionmaker in arriving at his decision"

3

and "actually . . . related to the process by which policies are formulated." Grand Central P'ship, 166 F.3d at 482. The privilege is destroyed when a deliberative document has been adopted or incorporated by reference into a final agency policy or decision. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 161 (1975).

### A. The 1989 Memo

The 1989 Memo appears to fit squarely within the protections of the deliberative process privilege because it is both predecisional and deliberative. It was written by the OLC for the FBI and contains analysis of the legal implications of the FBI's policy. It was prepared to help the FBI determine whether it had the authority to enter the names of persons with outstanding immigration warrants into the NCIC database. The Memo concludes that the FBI could only enter into the NCIC the names of persons alleged to have violated criminal laws.

FBI policy with regard to immigration warrants in the NCIC database has changed several times over the past few decades. Before 1974, both civil and criminal immigration warrants were entered into the NCIC database. (Schuessler Dec. Ex. A at 1.) In 1974, the FBI suspended the practice on the basis of an INS opinion that state and local officers could not "arrest" a person against whom an administrative (civil) warrant of deportation had been issued. Id. In 1986, the INS requested authorization from the NCIC to resume the entry of civil warrants of deportation. Id. In 1987, the FBI announced that it would consider this request at a meeting of the NCIC Advisory Policy Board ("APB"), a body of state and local law enforcement officials that advises the FBI on its NCIC policies. The FBI also sought an opinion from the OLC regarding the legality of the INS request.

In 1996 the DOJ publicly took the position that state and local law enforcement agencies were authorized only to enforce the criminal provisions of federal immigration law. In 2002, the DOJ flip-flopped and openly stated that state and local law enforcement could, in fact, lawfully enforce the civil provisions of the immigration law. As part of the 2002 policy, the Government stated that additional immigration records –

violations of registration requirements or visa terms – would be entered into the NCIC database.

### i. Waiver

First, Plaintiffs contend that because parts of the Memo have been disclosed, the rest of the document loses its protection. Specifically, that the disclosure of the conclusion of the 1989 Memo, its general subject matter, and the context in which it was prepared, constitutes a waiver here. I disagree. Partial disclosures of "of the contents of a document does not constitute a waiver of the applicable FOIA exemptions for the entire document." Mehl v. United States Environmental Protection Agency, 797 F. Supp. 43, 47-48 (D.D.C. 1992) (holding that a report that described the contents and quoted several passages of some sought-after documents did not waive exemption for the documents in their entirety). "Specificity is the touchstone in the waiver inquiry, and thus, neither general discussions of topic nor partial disclosures of information constitute waiver of an otherwise valid FOIA exemption." Dow Jones & Co., Inc. v. United States Dep't of Justice, 880 F. Supp. 145, 151 (S.D.N.Y. 1995) (holding that "limited, general and cursory discussions" of documents during a White House press conference did not constitute a waiver) citing Public Citizen v. Dep't of State, 787 F. Supp. 12, 14 (D.D.C. 1992), aff'd, 304 U.S. App. D.C. 154 (D.C. Cir. 1993).

The legal standard for waiver requires that the requester demonstrate "that the withheld information has already been specifically revealed to the public and that it appears to duplicate that being withheld." Mobil Oil Corp. v. United States Environmental Protection Agency, 879 F.2d 698, 701 (9th Cir. 1989) citing United States Student Ass'n v. CIA, 620 F. Supp. 565 (D.D.C. 1985). Plaintiffs have not met this burden. Plaintiffs' reliance on United States v. Metropolitan St. Louis Sewer District, 952 F.2d 1040 (8th Cir. 1992), is misplaced because there the disclosure was of an entire document to a limited group of people and not, as we have here, the general release of a few excerpts from an otherwise privileged document.

### ii. Adoption or Incorporation by Reference

Plaintiffs also argue that the privilege has been destroyed because the FBI adopted or incorporated by reference the reasoning and conclusions contained in the 1989 Memo. See Coastal States, 617 F.2d at 866. When a document is adopted as agency policy or incorporated therein by reference:

> The probability that an agency employee will be inhibited from freely advising a decisionmaker for fear that his advice if adopted, will become public is slight. First, when adopted, the reasoning becomes that of the agency and becomes its responsibility to defend. Second, agency employees will generally be encouraged rather than discouraged by public knowledge that their policy suggestions have been adopted by the agency. Moreover, the public interest in knowing the reasons for a policy actually adopted by an agency supports [disclosure].

Sears, 421 U.S. at 161. The Court "must examine all relevant facts and circumstances in determining whether express adoption or incorporation by reference has occurred." La Raza, 411 F.3d at 357 n.5. While there is no bright line test to show adoption or incorporation of a particular document into agency policy, we know that there must be a final agency decision and the agency's reliance must be based on both the analysis and conclusions of that document. La Raza, 411 F.3d at 358; Access Reports v. Dep't of Justice, 926 F.2d 1192, 1197 (D.C. Cir. 1991).

I will take the public references to the 1989 Memo in turn. The first of several public references to the 1989 Memo was made late that year in another OLC Memorandum prepared for the FBI, entitled, "Request by National Center for Missing and Exploited Children to Obtain Access to National Crime Information Center's Wanted Person File." This memo quoted the 1989 Memo with regard to FBI policy: "FBI policy limits inclusion on the Wanted Person File 'to those persons for whom warrants have been issued and who may be arrested by any law enforcement officer with the power to arrest.'" Oct. 6, 1989 OLC Memo.

A December 1992 Topic Paper prepared by the OLC for the NCIC Advisory Policy Board ("APB") recited the conclusion of the 1989 Memo, that local police may arrest the subject of an administrative immigration warrant only where the warrant is based on a criminal offense, and explained that "[f]ollowing this opinion, and consistent with NCIC policy, authorization was provided to INS for the limited entry of warrants of deportation." ("1992 APB Topic Paper") The 1992 APB Topic Paper was distributed to members of the APB Meeting, which included over 130 representatives from law enforcement agencies and private industry.

The 1989 OLC Memo was also mentioned in a publicly available memorandum authored by the OLC entitled "Assistance by State and Local Police in Apprehending Illegal Aliens" (the "1996 OLC Memo"), and states in pertinent part:

> In an opinion issued in 1989, this Office similarly recognized the distinction between the civil and criminal provisions of the INA for purposes of state law enforcement authority. We first expressed our belief that 'the mere existence of a warrant of deportation for an alien does not provide sufficient probable cause to conclude that the criminal provisions [of the INA] have in fact been violated.' 1989 OLC Op. at 8. We then concluded: "Because 8 U.S.C. § 1251 makes clear that an alien who has lawfully entered this country, lawfully registered, and who has violated no criminal statute may still be deported for noncompliance with the non-criminal or civil immigration provisions, the mere existence of a warrant of deportation does not enable all state and local law enforcement officers to arrest the violator of those civil provisions." Id. at 9.

Finally, the 1989 Memo was discussed and quoted in a later OLC Opinion that was publicly disclosed as the result of a separate FOIA action. See Nat'l Council of La Raza v. Dep't of Justice, 411 F.3d 350, (2d Cir. 2005). That OLC Opinion, dated April 3, 2002, ("2002 OLC Opinion"), was sent from the OLC to the Attorney General and concluded that state and local law enforcement have the authority to arrest aliens for immigration violations.

> Indeed, the only contrary suggestion of which we are aware is contained in a footnote in a 1989 opinion of this Office. In that

7

footnote, after stating that "it is not clear under current law that local police may enforce non-criminal federal statutes' and that any exercise of authority granted under state law' would necessarily have to be consistent with federal authority,' we opined that 'unlike the authorization for state and local involvement in federal criminal law enforcement, we know of no similar authorization in the non-criminal context.' … We did not further examine or explain the suggestion arising from our use of the word 'authorization.' Indeed, the contrast that the 1989 OLC Opinion posits between the criminal and non-criminal contexts is belied by its own citations to the Di Re[3] case and 18 U.S.C. § 3041 (1994), see 1989 OLC Opinion at 9 n. 18 . . . Moreover, the fact that the 1989 OLC Opinion elsewhere applies preemption analysis to the question of state police authority to arrest for federal offenses, see 1989 OLC Opinion at 4-5, indicates that the 'authorization' language in this footnote should not be regarded as reflecting a considered view of this Office that state arrest authority is dependent on federal authorization."

2002 OLC Opinion, at 4. The 2002 Opinion went on to state:

> This Office first addressed Gonzales[4] in the 1989 OLC Opinion, in which we advised the Federal Bureau of Investigation ("FBI") that the existence of an outstanding warrant of deportation for an alien provided an insufficient basis for entering the alien's name into its National Crime Information Center ("NCIC") Wanted Person File. See 1989 OLC Opinion at 1. FBI policy provided that only persons who could be arrested by any law enforcement officer with the power to arrest could be included in the NCIC Wanted Person File. Discussing Gonzales at length, we concluded that Gonzales "makes clear that local police may enforce criminal violations of the [INA]." 1989 OLC Opinion at 5. By contrast, we opined that "it is not clear under current law that local police may enforce non-criminal federal statutes." Id. at 4 n. 11. Because the issuance of a warrant of deportation did not necessarily indicate that a criminal law had been violated, we concluded that the mere existence of a warrant of deportation for an alien did not, under FBI policy, justify inclusion of the alien's name in the NCIC Wanted Person File….

---

[3] United States v. Di Re, 332 U.S. 581, 589 (1947).
[4] Gonzales v. City of Peoria, 722 F.2d 468, 474 (9th Cir. 1983)(holding that "the general rule is that local police are not precluded from enforcing federal statutes").

8

Id. at 6.  Referring to yet another OLC opinion, the 2002 OLC Opinion went on to read:

> The 1996 OLC Opinion directly addressed the circumstances in which state police could assist the INS in enforcing the federal immigration laws … Our conclusion rested on five authorities . . . Third, we relied on the 1989 OLC Opinion….

Id.

Examination of all the facts and circumstances here lead me to conclude that the 1989 Memo was the basis for a policy decision at the time.  A policy decision to the effect that civil warrants were not to be included in the NCIC database.  The fact that the policy may have changed later is not a relevant consideration.  Sears, 421 U.S. at 161 (holding that once a document is adopted as a rationale for a decision "the memorandum becomes part of the public record").

The Government argues that the Second Circuit's recent decision in La Raza dictates that adoption or incorporation has only occurred when an agency holds out a document to the public as the sole legal authority for a decision, coupled with an express statement from the decision-making agency of its reliance on the reasoning contained therein, the privilege should remain intact.  La Raza, 411 F.3d at 357.  It's hard to believe that the Second Circuit intended to fashion such a narrow standard, and didn't bother to say so.  Cases interpreting the deliberative standard are "dependant upon the individual document and the role it plays in the administrative process."  Coastal States, 617 F.2d at 867.  An agency "will not be permitted to develop a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because it is not designated as 'formal,' 'binding,' or 'final.'" Id.  While it is true the facts of La Raza showed public and repeated reliance by the Attorney General on a particular OLC memo, it does not follow that anything less than that will fail to abrogate the privilege.  The La Raza Court acknowledged this when it declined to set a bright line rule for adoption or incorporation.  La Raza, 411 F.3d at 358.

In the present case, while there is no act quite as overt as that in La Raza, there is still an express adoption of the 1989 Memo from the 1992 APB Topic Paper that stated:

9

> The OLC concluded that state and local police officers have legal authority to effect an arrest (and subsequent detention) of a fugitive against whom an administrative warrant had been issued when that warrant is based on a criminal violation. Following that opinion, and consistent with NCIC policy, authorization was provided to INS for the limited entry of warrants of deportation.

Clearly then the 1989 Memo (its reasoning and conclusion) was the basis for the decision to enter criminal, but not civil, INS warrants into the NCIC database. The Government argues that the phrase "following that opinion" could just as easily be a temporal reference. Not likely. This is a statement of affirmative reliance on the 1989 Memo for a policy decision made by the FBI. The FBI expressly sought an opinion from the OLC in 1987, and while that alone is not enough to justify disclosure, taking all of the circumstances together, it seems beyond peradventure that the FBI adopted the substance of the 1989 Memo as its policy. This conclusion is reinforced by the subsequent OLC memoranda that are now publicly available. (Oct. 6, 1989 OLC Memo, 1996 OLC Memo, 2002 OLC Opinion.) In those documents, the OLC refers to the 1989 Memo, espouses its reasoning, and quotes relevant portions of analysis in support of its conclusion – for sure it has now been publicly disclosed.

The Government contends that absent some sort of magic language where the decision-making agency admits reliance on the reasoning in addition to the conclusions of a document, the standard has not been met. While it is true that reliance on the reasoning is a necessary ingredient, here that reliance is implicit in both the 1992 APB Topic Paper and the collective OLC memoranda. La Raza, 411 F.3d at 358; Access Reports v. Dep't of Justice, 926 F.2d 1192, 1197 (D.C. Cir. 1991).

The Government also contends that the OLC memoranda are meaningless because the OLC does not have the power to effectuate a final agency decision. If the only evidence of adoption was the OLC advice contained in its memoranda then the privilege might be applicable. But the OLC memoranda in this instance are a continuing dialogue on the subject of INS warrants and the NCIC, which reflect the FBI's policy as it has

10

changed over these past few years. Those memoranda, combined with the affirmative statement by the FBI in 1987 that it sought legal support from the OLC, and the 1992 APB Topic Paper that purports to "follow" the 1989 Memo, demonstrate that the reasoning and conclusion of the 1989 Memo were adopted into agency policy.

In short, this situation is something more than the "casual references" to a document that fall short of the mark. See Tigue, 312 F.3d 70 (2d Cir. 2002) (holding that two minor references were insufficient to establish incorporation of a document); See also La Raza, 411 F.3d at 353-56.

### B. The 2002 Email

The 2002 Email is protected by the deliberative privilege. It is a response from the OLC to a request for advice regarding the detention of aliens listed within the NCIC database, and clearly relates in its entirety to that request. As the Supreme Court explains in Sears, "[a]gencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions, and the lower courts should be wary of interfering with this process." Sears, 421 U.S. at 153, n.18. The 2002 Email appears to constitute just such an exchange. Plaintiffs' suggestion that any privilege has been waived by public discussion of the detention of aliens and the Fourth Amendment is unavailing; there is no evidence that the specific analysis provided in the Email has been disclosed to the public.

### C. The Attorney Client Privilege

Because the deliberative privilege has evaporated insofar as the 1989 Memo is concerned, "the attorney-client privilege may not be invoked to protect" it. La Raza, 411 F.3d at 360. The Government will not be allowed "to make public use of [a document] when it serves [it's own] ends but claim the attorney-client privilege when it does not." Id.

## III. CONCLUSION

For the reasons set forth above, the Government's motion is GRANTED in part and DENIED in part. The Government shall produce the 1989 Memo within 10 days of the date hereof.

If there are to be any additional documents in this action that are challenged as exempt from disclosure, those motions should be filed within 15 days from the date hereof. In addition, the parties and amici in the related case, Doe v. ICE, M-54, are instructed to provide the Court with any supplemental briefs, should they be necessary, in connection with the motion for reconsideration in that case within 30 days of the date hereof.

**SO ORDERED.**
December __, 2005
New York, New York

_____
U.S.D.J.